```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
JOSEPH L. SANTILLI,           )
                              )
               Plaintiff,     )
                              )
v.                            )   Civil Action
                              )   No. 23-cv-13251-PBS
HARTFORD LIFE AND ACCIDENT    )
INSURANCE COMPANY and GROUP LONG )
TERM DISABILITY PLAN FOR EMPLOYEES )
OF ORACLE AMERICA, INC.,      )
                              )
               Defendants.    )
_____)
```

**MEMORANDUM AND ORDER**

August 13, 2025

Saris, J.

**INTRODUCTION**

Plaintiff Joseph Santilli, a former employee of Oracle Inc. ("Oracle"), brings this action against Defendant Hartford Life and Accident Insurance Company ("Hartford") under 29 U.S.C. § 1132(a)(1)(B) seeking long-term disability ("LTD") benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Santilli alleges that Hartford (1) improperly calculated his monthly benefits by excluding bonuses he earned while employed and (2) wrongfully terminated his benefits in May 2022. Both parties have moved for summary judgment.

1

After a hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** Santilli's motion for summary judgment (Dkt. 51) and **ALLOWS IN PART** and **DENIES IN PART** Hartford's motion for summary judgment (Dkt. 47).

## BACKGROUND

### I. Santilli's Employment History

Oracle employed Santilli as a sales representative between March 2019 and July 2019. Santilli's employment contract provided a base salary of $5,001 per month with an option for bonuses. During his time at Oracle, he earned approximately $33,202.74 in bonuses and total compensation of $55,707.24. Santilli was enrolled in Oracle's LTD benefits ("LTD Plan" or "Plan"), which was insured by Hartford.

### II. LTD Plan Details

Under the Plan, an employee qualifies for LTD benefits if he is "Totally Disabled" as defined in the policy. The Plan defines "Total Disability" as follows:

> Total Disability or Totally Disabled means during the Elimination Period and for the next 24 months, as a result of injury or sickness, You are unable to perform with reasonable continuity the Essential Duties necessary to pursue Your Occupation in the usual or customary way.
>
> After that, as a result of injury or sickness You are unable to engage with reasonable continuity in Any Occupation.

AR 33 (emphasis added).[1] "Any Occupation" is defined as "any occupation for which You are qualified by station in life, physical and mental capacity, education, training or experience, and that has an earnings potential greater than the lesser of: 1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit." Id. at 30.

The amount of LTD benefits a qualifying participant is entitled to depends on "Pre-disability Earnings." The Plan defines "Pre-disability Earnings" as the base salary as of the date of disability "plus Bonuses and Commissions paid in the preceding October 1 through September 30 period." Id. at 32. However, in the same definition section, the LTD Plan defines "Bonuses" as the

> monthly average of monetary bonuses You received from Your Employer over: 1) the 12 month period ending immediately prior to the last day You were Actively at Work before You became Disabled; or 2) <u>the total period of time You worked for Your Employer, if less than the above period</u>.

Id. at 30 (emphasis added). A Hartford claims employee later acknowledged that these provisions "may have conflicting language . . . as the definition for bonuses/commissions and the lookback period may not align" for employees, like Santilli, who worked less than the fixed lookback period but earned bonuses. Id. at 785.

---

[1] Citations to "AR" refer to the Bates-stamped page numbers in the Administrative Record filed by the parties.

3

The Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy, to the extent permitted by applicable state law." Id. at 34.

### III. Santilli's Medical History

Santilli has a long history of concussions from playing hockey and was diagnosed with post-concussive syndrome in 2006. He also suffers from anxiety, depression, and ADHD. In July 2019, a chiropractic adjustment caused chronic neck and spine pain. In October 2019, he was involved in a motor vehicle accident. These injuries culminated in diagnoses of cervicalgia, acute radiculopathy, segmental dysfunction of the cervical region, chronic neck pain, torticollis spasmodic, and chronic headaches. He did not return to work after October 2019 and applied for LTD benefits.

### IV. The Initial Denial of Benefits and Voluntary Remand

Hartford denied Santilli's initial claim in September 2020, finding he was not disabled from his "Own Occupation." Santilli sued to challenge the denial of benefits. See Santilli v. Hartford Life & Accident Ins. Co., No. 1:22-cv-10060-PBS (D. Mass. Jan. 14, 2022), Dkt. 1. While that case was pending, the parties agreed to a voluntary remand so that Hartford could review additional medical records. See id., Dkts. 20.

4

Santilli's treating primary care physician, Dr. Mary Gustilo, submitted further documentation stating that Santilli was unable to work. Hartford retained three independent peer reviewers: Dr. Arash Dini, an orthopedic surgeon; Dr. David Burke, a neurologist; and Dr. Gabriel Jasso, a psychologist. The three physicians reviewed Santilli's medical record individually, before convening for a consensus discussion.

Dr. Dini found that Santilli experienced significant impairments that warranted restrictions to avoid further injury, including limiting sitting to just forty-five minutes at a time, for a total of six hours per day; limiting standing and walking to a combined six hours per day, and various restrictions on carrying and lifting. However, Dr. Dini determined that these restrictions did not preclude full-time work.

Dr. Burke concluded that Santilli was impaired from July 16, 2019, through October 14, 2019, "as well as through the present." AR 1035. Dr. Burke's advisory report disagreed with Dr. Gustilo's finding of total disability, noting that "despite [Santilli's] history of significant episodes of trauma and concussions as well as findings supporting his post-concussive symptoms to a degree, he still retains significant function in his strength, sensation, coordination, and cognitive capabilities, which would support capabilities for a full-time work function." Id. at 1037. Nonetheless, Dr. Burke found that from December 31, 2021, to April

5

30, 2022, Santilli should be restricted from exposure to certain light sources; limit computer use to twenty minutes at a time for a total of two hours in an eight-hour workday; have four days off per month to accommodate severe headache exacerbations; and avoid sustained ambient noise above a certain volume. From May 1, 2022, Dr. Burke recommended less restrictive limitations, allowing unrestricted sitting; standing for one hour at a time up to five hours per day; walking for one hour at a time up to three hours per day; and occasional lifting, carrying, pushing, pulling, stair climbing, and balancing, among other activities.

Dr. Jasso concluded from his review that Santilli had "normal mentation, including normal concentration, attention, fund of knowledge, immediate and delayed memory, and speech," which did not warrant restrictions or limitations. Id. at 1042-43.

Following their individual assessments, the three physicians met for a consensus conference and adopted a combined set of the restrictions drawn from the reports of Drs. Burke and Dini. These included the light, noise, computer-use, and four-days-off-per-month limitations, as well as sitting for up to forty-five minutes at a time for a total of six hours per day; standing for up to thirty minutes at a time for a total of four hours per day; walking for up to twenty minutes at a time for a total of two hours per day; and occasional lifting, carrying, pushing, pulling, stair

6

climbing, and balancing, among other activities. These limitations were applicable through April 30, 2022, but not thereafter.

Based on these consensus restrictions, a Hartford vocational case manager found that Santilli would not be capable of performing the duties of his occupation for the entire twenty-four-month period in which the test of disability is based on "Your Occupation," which ended on October 13, 2021. Santilli was also found unable to perform "Any Occupation" through April 30, 2022, due primarily to his need for four days off per month, which is outside the typical amount of paid time off, and limited computer use. As of May 1, 2022, when those restrictions were lifted, the vocational manager concluded that Santilli could perform certain occupations, including Assignment Clerk, Order Clerk, License Clerk, Routing Clerk, and Financial Aid Counselor.

Hartford approved benefits retroactively, paying $3,334 per month, calculated using only Santilli's base salary, through April 30, 2022. No bonuses were included.

## V. The Currently Disputed Denial of Benefits

In August 2023, Santilli administratively appealed both the calculation and termination of those benefits as of May 1, 2022. Santilli submitted additional medical evidence, including a report from Dr. David Hurtado, a physiatrist who examined him, and further documentation from Dr. Gustilo.

In response, Hartford engaged three new medical reviewers: Dr. Michael Chen, an orthopedic surgeon; Dr. Charles Golden, a neuropsychologist; Dr. Sameer Jain, a neurologist and pain management specialist. Drs. Chen and Jain are unlicensed to practice in Massachusetts. All three physicians found that no restrictions or limitations were supported after May 1, 2022. Hartford forwarded these reports to Santilli and offered him an opportunity to respond. Afterward, Hartford upheld its determination that Santilli did not meet the definition of disabled under the "Any Occupation" standard after April 30, 2022.

## VI. Procedural History

Santilli filed this action against Hartford on December 30, 2023. In June 2024, he moved for a determination that the applicable standard of review was de novo. Before the Court ruled, the parties mediated and stipulated that the Court should review Hartford's decision under a deferential standard, overturning it only if arbitrary, capricious, or an abuse of discretion.

## LEGAL STANDARD

A motion for summary judgment in the ERISA context "is simply a mechanism for" deciding the case on the merits. Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 110 (1st Cir. 2017). The district court "sits more as an appellate tribunal than as a trial court and must evaluate the reasonableness of an administrative determination in light of the record compiled

8

before the Plan fiduciary." Hatfield v. Blue Cross & Blue Shield of Mass., Inc., 162 F. Supp. 3d 24, 34 (D. Mass. 2016) (cleaned up).

As a default rule, "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard." Id. (alteration in original) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). However, where, as here, "the Plan contains a clause plainly reserving to [the insurer] discretionary interpretation authority," the court must defer to the deciding entity's "reasonable reading of the Plan unless [its] decision to deny a benefits claim was arbitrary and capricious." Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 78 (1st Cir. 2019). The arbitrary and capricious standard "asks whether a plan administrator's determination is plausible in light of the record as a whole, or, put another way, whether the decision is supported by substantial evidence in the record." Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 61 (1st Cir. 2013) (cleaned up).

## **DISCUSSION**

Santilli raises three principal challenges to Hartford's actions under the Plan. First, he contends that Hartford miscalculated his monthly benefit amount by excluding his bonuses, thereby underpaying him. Second, he argues that Hartford's

decision to terminate benefits was arbitrary and capricious because it lacked sufficient evidentiary support and failed to address medical findings favorable to him. Third, he asserts that Hartford committed procedural violations of ERISA by failing to describe what additional information he needed to submit to perfect his claim and by relying on medical reviewers not licensed to practice in Massachusetts. The Court addresses each argument in turn.

## I.   Benefit Calculations

The parties dispute how "Pre-disability Earnings" and "Bonuses" should be calculated under the Plan. Santilli contends his monthly benefits should be $8,270, which includes both his base salary and the bonuses he earned during his employment. Hartford calculated his monthly benefits as $3,334 -- based on base salary alone -- because he earned no bonuses in the fixed lookback period of October 1 through September 30 immediately preceding his disability.

When an ERISA plan grants the plan administrator discretion, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" Conkright v. Frommert, 559 U.S. 506, 521 (2010) (quoting Firestone, 489 U.S. at 111). Reasonableness is determined "by taking account of several different, often case-specific, factors, reaching a result by weighing all together." Doe v. Standard Ins. Co., 852 F.3d 118, 123 (1st Cir. 2017)

10

(quoting Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)). One such factor is the structural conflict of interest present when an administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 36 (1st Cir. 2011) (quoting Glenn, 544 U.S. at 108).

This dispute arises from two provisions in the Plan that offer conflicting methods for calculating bonus income. The "Pre-disability Earnings" definition states that benefits are based on the salary base "plus Bonuses and Commissions paid in the preceding October 1 through September 30 period." AR 32. The separate definition of "Bonuses," however, provides that if an employee worked fewer than twelve months, bonuses are to be calculated as the "monthly average of monetary bonuses" earned during "the total period of time" worked. Id. 30. A Hartford claims specialist acknowledged that "the policy may have conflicting language" and "may not align." Id. at 785.

The First Circuit has found a plan interpretation "beyond the bounds of reasonableness" when the interpretation applied the same term inconsistently across plan provisions or construed a term in a way that rendered another provision meaningless. D & H Therapy, 640 F.3d at 38-40. Here, Hartford's interpretation does both. The application of "Bonuses" for someone, like Santilli, who works fewer than twelve months is internally inconsistent. Under the

11

"Pre-disability Earnings" definition, bonuses are limited to amounts earned during the fixed lookback period, which here yields a value of zero. Yet the separate "Bonuses" definition expressly provides a different calculation method for short-tenured employees, directing use of the average bonuses earned over the actual period of employment. Hartford's interpretation renders meaningless the definition of "Bonuses" for when an employee has worked fewer than twelve months.

This is especially troubling given Hartford's structural conflict of interest. As both the benefits decisionmaker and payor, Hartford had a direct financial incentive to adopt the interpretation that minimized benefits. Hartford has not taken any steps to mitigate this conflict of interest. See Lavery, 937 F.3d at 79 ("[T]he conflict-of-interest factor 'should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.'" (quoting Glenn, 554 U.S. at 117)).

Considering the plain language of the Plan, the acknowledged ambiguity, the inconsistent application of the bonus provisions, and the weight of the conflict-of-interest factor, the Court finds that Hartford's decision to exclude Santilli's bonuses from his benefit calculation was unreasonable and an abuse of discretion.

## II. Termination of Benefits

Santilli also argues that Hartford's termination of his benefits was arbitrary and capricious because Hartford did not show any medical improvement by April 30, 2022; failed to address the opinion of the physiatrist who examined him; failed to credit his reports of chronic pain; and disregarded the opinion of Hartford's own consulting neurologist, who wrote that Santilli was "impaired from work functioning due to his medical conditions as of 7/16/2019 through 10/14/2019, as well as through [August 2022]." AR 1035.

A plan administrator's decision must be upheld if it is "reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins., 360 F.3d 211, 213 (1st Cir. 2004). "Evidence is substantial if it is reasonably sufficient to support a conclusion . . . ." Id.

Here, Hartford hired six physicians, three in the initial review and three on appeal, to determine Santilli's medical status. The six doctors reviewed Santilli's medical records and did not treat Santilli directly. All six physicians independently found that Santilli's restrictions and limitations decreased after April 30, 2022. Hartford's vocational manager, applying the consensus restrictions before and after April 30, found that Santilli was disabled from "Any Occupation" before April 30, 2022, but not

13

after. This conclusion is supported by substantial evidence in Santilli's medical reports and the reviewers' findings.

Santilli faults Hartford for not adopting the assessments of his treating physicians, namely Drs. Gustilo and Hurtado. In her November 2023 report, Dr. Gustilo opined that Santilli "is unable to work in his past occupation as a salesperson at Oracle" and that, "[g]iven his current symptoms, [he] is not able to work in a less competitive occupation on a full-time basis." AR 926. Dr. Hurtado similarly wrote that Santilli "will no longer be able to enjoy the same level of activity relating to his work and activities of daily living." Id. at 705. He went on to opine that Santilli's injuries "greatly and permanently impact[] his lifting capabilities and ability to maintain static positions including while driving or working at a computer." Id. Dr. Hurtado did not quantify restrictions on, for example, time at a computer.

While Santilli relies heavily on these reports, "the mere existence of contradictory evidence does not render a plan fiduciary's determination arbitrary and capricious." Leahy v. Raytheon Co., 315 F.3d 11, 19 (1st Cir. 2002). Moreover, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with

14

a treating physician's evaluation." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003).

Furthermore, Hartford's denial letter directly addressed these opinions. Quoting Drs. Chen and Jain, the letter explained that Dr. Gustilo's conclusion that Santilli could not work was "not supported" by the medical record, citing the absence of recent specialist visits or diagnostic imaging and noting that certain prior symptoms had been treated. AR 56-58. Dr. Golden addressed Dr. Hurtado's opinion, observing that he did not provide specific restrictions relevant to the "Any Occupation" standard, such as measurable limits on computer use.

Santilli also contends that Hartford ignored his self-reported symptoms. The record shows otherwise. Dr. Chen noted Santilli's longstanding complaints of cervicalgia dating to 2019 but found the reported symptoms inconsistent with largely unremarkable imaging and orthopedic exams. Dr. Jain similarly acknowledged Santilli's headaches and neck pain but found no evidence of severe episodes or focal neurologic deficits and concluded that he could function within the outlined restrictions. Hartford's denial letter summarized these findings, stating that self-reported symptoms must be corroborated by clinical evidence such as treatment history, activity level, and examination results.

Finally, Santilli asserts that Hartford ignored Dr. Burke's individual opinion that he was impaired through August 2022. The record shows that Dr. Burke participated in the consensus conference with Drs. Dini and Jasso, during which the panel agreed on reduced restrictions after April 30, 2022. Even in his individual report, Dr. Burke lessened Santilli's restrictions after that date. The consensus restrictions reflected his input and formed the basis for the vocational finding that Santilli could work in identified occupations as of May 1, 2022.

Accordingly, Hartford's decision to terminate benefits was supported by substantial evidence and was not arbitrary and capricious.

### III. Procedural Deficiencies

Santilli raises two alleged procedural defects in Hartford's review: (1) that the denial letter failed to provide sufficient guidance on what information to submit for his appeal in violation of 29 C.F.R. § 2560.503-1(g)(1)(iii), and (2) that two of the reviewing physicians were not licensed to practice in Massachusetts.

Santilli asserts that Hartford's denial letter failed to satisfy the requirements of 29 C.F.R. § 2560.503-1(g)(1)(iii), which obligates an administrator to include in a denial letter "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation

16

of why such material or information is necessary." Santilli contends that the letter left him "guessing" as to what was required to prove continuing eligibility after May 1, 2022. Dkt. 52 at 4.

The First Circuit has made clear, however, that this regulation does not require the administrator to tell the claimant how to "win the appeal." Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998). Stated differently, "[p]erfect the claim" does not mean "win the claim." Id. In Terry, the court upheld an insurer's instruction to submit "any information which may affect the decision to terminate your claim," which gave the claimant "a sufficiently clear understanding of the administrator's position to permit effective review." Id. (quoting Donato v. Metro. Life Ins. Co., 19 F.3d 375, 382 (7th Cir. 1994)). Hartford's instructions to Santilli closely resemble those approved in Terry. The letter directed:

> Your appeal letter should be signed, dated and clearly state your position. Please include your printed or typed full name, Policyholder, and at least the last four digits of your Social Security Number with your appeal letter (i.e. xxx-xx-1234). Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

AR 84. These instructions were preceded by a letter detailing Hartford's reasons for terminating benefits. Id. at 80-84. As in Terry, these directions were sufficient to allow Santilli to perfect his claim.

17

Even if there were a technical defect, Santilli has not shown that a more precise form of notice would have altered the outcome. The First Circuit has cautioned that "allowing a claim for relief because of inadequacy of formal notice without any showing that a precisely correct form of notice would have made a difference would result in benefit claims outcomes inconsistent with ERISA aims of providing secure funding of employee benefit plans." Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 840 (1st Cir. 1997). Here, no such showing has been made.

Santilli also argues that Hartford's appeal review was procedurally defective because two of the three consulting physicians, Drs. Jain and Chen, are not licensed to practice in Massachusetts. However, ERISA imposes no requirement that consulting physicians be licensed in the claimant's state; licensure within the United States is sufficient. See Rogers v. Unum Life Ins. Co. of Am., No. 22-cv-11399, 2024 WL 1466728, at *7 n.4 (D. Mass. Mar. 31, 2024); Abi-Aad v. Unum Grp., No. 21-cv-11862, 2023 WL 2838357, at *14 (D. Mass. Apr. 7, 2023).

## ORDER

For the foregoing reasons, the Court **ALLOWS** Santilli's motion for summary judgment (Dkt. 51) as to the calculation of benefits and otherwise **DENIES** the motion. The Court **DENIES** Hartford's motion for summary judgement (Dkt. 47) as to the calculation of benefits and otherwise **ALLOWS** the motion. If the parties agree on the amount

18

of damages to be awarded, they shall notify the Court within fourteen days of this Order. If no agreement is reached, the Court will set a briefing schedule to determine the appropriate amount.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge